IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JORGE BRAVO AND CLORINDA BRAVO : | |
|     Plaintiffs, : | |
| : | |
| v. : | C.A. NO. 13-406M |
| : | |
| PNC BANK, NATIONAL ASSOCIATION, ALIAS, PNC : | |
| MORTGAGE SERVICES, INC., ALIAS, GOVERNMENT: | |
| NATIONAL MORTGAGE ASSOIATION, ALIAS, AND : | |
| JOHN DOE, ALIAS : | |
|     Defendants, : | |

## MOTION TO DISMISS

Now comes the defendant, the Government National Mortgage Association (Ginnie Mae) of the United States Department of Housing and Urban Development, by and through its attorneys, and moves for dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6), for the reasons that the Court lacks subject matter jurisdiction and the plaintiff has failed to state a claim upon which relief can be granted.

    Respectfully submitted,

    GOVERNMENT NATIONAL
    MORTGAGE ASSOCIATION
     Defendant

    By its attorneys,

    PETER F. NERONHA
    United States Attorney

    /s/ Michael P. Iannotti
    MICHAEL P. IANNOTTI
    Assistant U.S. Attorney
    United States Attorney's Office
    50 Kennedy Plaza, 8th Floor
    Providence, RI 02903
    (401) 709-5000/(401) 709-5017 (fax)
    Email: michael.iannotti@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JORGE BRAVO AND CLORINDA BRAVO : <br>     Plaintiffs, : <br> : <br> v.  : <br> : <br> PNC BANK, NATIONAL ASSOCIATION, ALIAS, PNC : <br> MORTGAGE SERVICES, INC., ALIAS, GOVERNMENT: <br> NATIONAL MORTGAGE ASSOIATION, ALIAS, AND : <br> JOHN DOE, ALIAS  : <br>     Defendants,  : | C.A. NO. 13-406M |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT GOVERNMENT NATIONAL MORTGAGE ASSOCIATION'S
## MOTION TO DISMISS

*Background*

The defendant, the Government National Mortgage Association (Ginnie Mae), is a corporation wholly owned by the United States within the Department of Housing and Urban Development (HUD). 12 U.S.C. §1717(a)(2)(A). Pursuant to 12 U.S.C. §1721(g), Ginnie Mae operates a mortgage-backed securities (MBS) program. Under this program, Ginnie Mae authorizes private lenders, which Ginnie Mae refers to as "Issuers," to issue securities backed by federally insured or guaranteed home mortgages. The Issuers either originate the loans or buy existing loans from an originating lender. The Issuers package the mortgages into groups known as "pools," each pool backing an MBS. The MBS securities are sold to private investors, and the funds generated by the sale repay the Issuer for funds that the Issuer used to originate or to buy the loans. The securities are issued in a principal amount equal to that of the pooled mortgages, and bear an interest rate slightly below that of the mortgages.

Mortgages which are eligible to back Ginnie Mae-guaranteed MBS are (1) mortgages insured under the National Housing Act; (2) mortgages guaranteed by the Department of

Veterans Affairs; (3) mortgages guaranteed by the Rural Housing Service; or (4) mortgages guaranteed by the Secretary of Housing and Urban Development under section 184 of the Housing and Community Development Act of 1992.  Ginnie Mae does not set standards for the mortgages which are to be federally insured or guaranteed.  Each agency that is providing the mortgage insurance or loan guaranty sets the standards for the mortgage or loan originated.  The National Housing Act (12 U.S.C. §1701 et seq.) sets out standards under which the Federal Housing Administration (FHA), a component of HUD that is separate and apart from Ginnie Mae, may insure mortgages.  *See*, *for example*, section 203(a) of the National Housing Act (12 U.S.C. §1709(a)).  The Ginnie Mae MBS Guide, 5500.3 Rev. 1(Guide) in Chapter 9-2(A), states as follows:

> Insurance/Guaranty. Each issue of securities must be backed by a separate pool of mortgages… which… mortgage must be, and must remain, insured or guaranteed under the National Housing Act, Title V of the Housing Act of 1949, the Servicemen's Readjustment Act of 1944, chapter 37 of Title 38, United States Code, or section 184 of the Housing and Community Development Act of 1992, and must at all times comply with the requirements for obtaining and maintaining such insurance or guaranty.

In connection with each pool for which an Issuer intends to issue a security and is seeking a Ginnie Mae guaranty for such security, the Issuer and Ginnie Mae execute a "Guaranty Agreement," a copy of which is attached as Exhibit A.  As a condition to providing the guaranty, Ginnie Mae requires Issuers to assign the mortgages to Ginnie Mae.  Ginnie Mae then permits the Issuer to hold legal title and service the mortgage loans on its own behalf.  The assignment of the mortgage is required so that if the Issuer defaults on its obligation to Ginnie Mae, Ginnie Mae can immediately extinguish the Issuer's interests in the mortgage loans.  Unless and until Ginnie Mae defaults the Issuer, legal title to the mortgage loans remain with the Issuer.  *See, e.g.*

*United States v. NBD Bank*, 922 F. Supp. 1235 (E.D. Mich. 1996); Guaranty Agreement (Exhibit A); Ginnie Mae Mortgage-Backed Securities Guide; Federal Reserve System Truth in Lending, 74 Fed. Reg. 60143, 60146 (2009).

The Issuer certifies, on form HUD 11706, a copy of which is attached as Exhibit B, that the mortgages meet the requirements of the Guide.  Further, in the Guaranty Agreement between Ginnie Mae and the Issuer that is executed for each pool, the Issuer covenants and warrants that each of the pooled mortgages are "eligible mortgages" as defined in the Guide.

In order to make such securities attractive to private investors, Ginnie Mae guarantees that holders of the MBS will receive timely payment of principal and interest, and Ginnie Mae's guaranty is backed by the full faith and credit of the United States.[1]  The Issuer serves as mortgagee and is solely responsible for servicing the pooled mortgages and the securities backed by these mortgages.

In circumstances where the loans collateralizing the pools are liquidated from the pools, such as in the case at bar, the remaining principal is passed through to the investor of the security causing the Issuer to liquidate the loan out of the pool.  Once the investor is paid, Ginnie Mae no longer has an interest in the loan, and the Issuer then holds both legal and equitable title.

Ginnie Mae, as a governmental entity, is not to be confused with secondary market entities which are federally chartered but privately owned, the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac). Unlike these entities, Ginnie Mae does not purchase the loans or otherwise have legal title to the loans.  Only upon default and extinguishment of the Issuer's rights under the Guaranty

---

[1] By making the MBS more secure and thus more attractive, Ginnie Mae's guaranty helps attract more funds into the secondary mortgage market, thus making more funds available for the FHA-insured and VA-guaranteed loans to low and moderate income home buyers, and thus serving the public purpose of helping to increase home ownership for such persons.

Agreement does Ginnie Mae take back legal title to the mortgages and become the servicer. The financial benefits and burdens of Ginnie Mae's operations and programs "inure solely to the Secretary of the Treasury." 12 U.S.C. §1722. All of Ginnie Mae's powers and duties are "vested in the Secretary of Housing and Urban Development," and Ginnie Mae is administered under the Secretary's direction. 12 U.S.C. §1723(a).

*Facts*

The plaintiff's loan was originated on or about May 14, 2004, by the National City Mortgage Co. (National City)[2], in the principal sum of $208,420.00 and recorded on May 14, 2004, in the Land Evidence Records of the City of Providence, Rhode Island. National City pooled the loan on or about June 1, 2004, pool number 627311 (see Exhibit A). However, National City then liquidated the loan from the pool on or about December, 2009. At that point the loan was paid off with a pass-through of the remaining principal paid to the investor and Ginnie Mae no longer had any interest in the loan.

Prior to guarantying the security backed by the plaintiff's loan, Ginnie Mae required National City to assign the mortgage to Ginnie Mae. This provision continued to be in effect until the loan was purchased from the pool. However, pursuant to the Guaranty Agreement, National City held legal title to the mortgage loan and serviced the loan. This means that as a Ginnie Mae approved Issuer and servicer of the loan, National City is the holder of the note and mortgage[3].

Ginnie Mae was not a party to the origination of the plaintiff's loan and had no interaction with Plaintiff or any other mortgagors of loans that collateralized the securities for

---

[2] The defendant, PNC Bank, N.A. (PNC), acquired National City several years ago.
[3] Because PNC continues to use the Issuer number of National City, Ginnie Mae is unable to determine when exactly the change occurred.

4

which National City or any other entity was the Issuer.  Although Ginnie Mae guarantees to the investors the timely payment of principal and interest on the MBS, it does not buy or sell the loans or issue the MBS.  National City, as the holder of the legal title to Plaintiff's loan, has the right to collect the mortgage payments to the extent that they are due.  Plaintiff's mortgage payments are not paid or forwarded to Ginnie Mae.  Therefore, Ginnie Mae has no authority to release the security on this loan and is not the correct party to respond to any issues in connection with the plaintiff's loan or the servicing thereof.

*Argument*

I. THE COURT LACKS JURSDICTION OVER THIS ACTION

    A. *No Privity of Contract Exists between Ginnie Mae and the Plaintiff*

Although assignments to Ginnie Mae are a function of the contracts between Ginnie Mae and its Issuers,  this does not provide a basis for federal court jurisdiction.  The Tucker Act, 28 U.S.C. §1491(a), provides that the United States Court of Federal Claims has jurisdiction over contract claims of any size against the United States. One of the central tenets of the Tucker Act is that the plaintiff and the United States must be in privity with each other; persons not in privity cannot sue for breach of contract.  *Erickson Air Crane Co. of Washington, Inc. v. United States,* 731 F.2d 810, 813 (Fed. Cir. 1984); *United States v. TAC Construction Company, Inc.*, 760 F. Supp. 590, 597(S.D. Miss. 1991); *Eubanks v. United States*, 25 Cl. Ct. 131, 137 (1992); *California Sand and Gravel, Inc. v. United States*, 22 Cl. Ct. 19, 24, 26 (1990) (only a party with direct contractual relationship with the United States may bring a breach claim under the Tucker Act).

The same contractual relationship is required under The Little Tucker Act, 28 U.S.C. §1346(a)(2), which gives the appropriate district court concurrent jurisdiction over a breach of

contract claim against the United States for amounts in controversy of less than $10,000. *United States v. Bormes*, 133 S. Ct. 12, 184 L. Ed. 2d 317, 2012 U.S. LEXIS 8705, 81 U.S.L.W. 4007, 23 Fla. L. Weekly Fed. S 529 (U.S. 2012).

Mortgagors, however, are not parties to the contracts executed between Ginnie Mae and their issuers, nor are they third party beneficiaries to the contracts. Accordingly, neither the Tucker Act nor the Little Tucker Act provides the requisite waiver to bring a contract action relating to these contracts.

### B. The Plaintiff Lacks Standing to Assert a Claim

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). In the absence of an actual case or controversy, the Court is without jurisdiction to decide the case. *See, Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also, Poe v. Ullman*, 367 U.S. 497, 502 (1961). The requirement that a litigant possess standing to sue "is an essential and unchanging part of the case-or controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III's standing requirement contains three elements. First, "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and punctuation omitted). Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (citation and internal punctuation omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (citation and internal punctuation omitted).

The plaintiff cannot satisfy these elements because the plaintiff has not alleged specific conduct by Ginnie Mae. Rather, the plaintiff improperly attributes all of the actions of all of the defendants to one another.

## II. THE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The plaintiff does not allege any facts relating to conduct by Ginnie Mae that would show that the plaintiff is entitled to relief from Ginnie Mae. Moreover, even if the allegations of misconduct could be made, Ginnie Mae no longer has any interest in the plaintiff's mortgage since it has been liquidated from the pool.

Ginnie Mae was a guarantor of mortgage-backed securities collateralized by the plaintiff's loan until the loan was paid in full and removed from the pool on or about December, 2009. As guarantor, Ginnie Mae requires that the Issuer "transfers, assigns, sets over and otherwise conveys to [Ginnie Mae] all of the [Issuer's] right, title, and interest in and to the [mortgage loans]" to Ginnie Mae, so that if the Issuer defaults, Ginnie Mae can immediately extinguish the Issuer's interest in the mortgage loan, which is the legal title held by the Issuer, in order to service the loan and otherwise perform the duties of the Issuer. However, when an Issuer repurchases a mortgage loan out of the pool, Ginnie Mae ceases to have an interest in that mortgage loan. See Guaranty Agreement, Exhibit B; *United States of America v. NBD,* 922 F. Supp. 1235 (E.D. Mich. S.D. 1996).

F.R.Civ.P. 12(b)(6) provides for a dismissal of a Complaint "for failure of the pleading to state a claim upon which relief can be granted". Rather, the Complaint must include "sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even *pro se* pleadings "must meet some minimum threshold in providing a defendant

with notice of what it is that it allegedly did wrong." *Brazil v. United States Dept. of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).  Construing the Complaint in the light most favorable to the plaintiff, the Complaint does not state any discernible claims against Ginnie Mae upon which relief can be granted.

*Conclusion*

For the aforementioned reasons, Ginnie Mae is not a relevant party to this proceeding, as Ginnie Mae does not have an interest in the mortgage loan at issue in the Complaint. Ginnie Mae is neither the (i) Issuer/ Lender of record, (ii) an investor in the mortgage, nor (iii) in privity of contract with the Plaintiff, nor has Plaintiff stated a case or controversy much less a claim upon which relief can be granted.  Therefore, Ginnie Mae should be dismissed with prejudice as a defendant in these proceedings pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

Respectfully submitted,

GOVERNMENT NATIONAL
MORTGAGE ASSOCIATION
Defendant

By its attorneys,

PETER F. NERONHA
United States Attorney

 /s/ Michael P. Iannotti
MICHAEL P. IANNOTTI
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000/(401) 709-5017 (fax)
Email: michael.iannotti@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 2nd day of August, I electronically filed the within Defendant's Motion to Dismiss and supporting Memorandum, with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. The following attorney has been served electronically:

    John B. Ennis, Esq.
    1200 Reservoir Avenue
    Cranston, RI 02920.

                                   /s/ Michael P. Iannotti
                                   MICHAEL P. IANNOTTI
                                   Assistant U.S. Attorney